**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **JAMARCO PATTON,** | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **CIVIL FILE ACTION NO.** |
| | * | |
| | * | |
| **JERRY PHILLIPS,** | * | |
| **IN HIS INDIVIDUAL CAPACITY** | * | |
| **Defendant** | | |

## COMPLAINT FOR DAMAGES

COMES NOW, JAMARCO PATTON, the Plaintiff in the above-styled civil action, and files this, his *Complaint for Damages* against Inv. Jerry Phillips of the Hall County Sheriff's Office, the Defendant herein. Plaintiff Jamarco Patton brings this *Complaint for Damages* under 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the United States Constitution, and Georgia law.

## INTRODUCTION

### 1.

This is a case about a patently unreasonable arrest and the effects it had on an innocent man, Plaintiff Jamarco Patton (Mr. Patton). This is a civil rights action for money damages brought pursuant to 42 U.S.C. §1983.

## JURISDICTION AND VENUE

### 2.

This case presents a federal question under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has subject matter jurisdiction under 28 U.S.C. §1331.

1

3.

Venue is proper in the Northern District of Georgia, Gainesville Division under 28 U.S.C. §1391(b) and Local Rule 3.1(B)(3) because the action arose within this District and Division.

4.

At all times relevant to this action, the Defendant acted under color of law and within the scope of his discretionary functions as an employee of the Hall County Sheriff's Office. At all times, the Defendant acted within his discretionary authority when deciding to apply for warrants against Mr. Patton and arrest him and when participating in the indictment process against Mr. Patton.

**FACTS**

5.

The facts leading to Mr. Patton's false arrest for felony murder, aggravated battery, aggravated assault, and later indictment for one count of malice murder, three counts of felony murder, two counts of aggravated assault, one count of armed robbery are clear. On November 8, 2022, at approximately 10:30 a.m., Hall County Sheriff's Office deputies responded to 1331 Brown Street, in Gainesville, Georgia, in response to a 911 call regarding a man who had been shot in front of someone's home. This man, ultimately identified as Christopher Dixon, was observed by officers lying on the ground next to the passenger side of a Honda Pilot SUV when the officers arrived and began investigating the incident.

6.

On arrival, officers spoke with Raven Collett, who stated that she brought Mr. Dixon to the location to meet with some guys. Initially, they went to a double-wide trailer, but that was the wrong address, so they turned around and were flagged down by the guys at 1331 Brown Street.

2

7.

Ms. Collett did not know why Mr. Dixon was meeting with these two males.

8.

Both Ms. Collett and her seven-year-old son Zayden were in the SUV when Mr. Dixon met with the males, one of whom she described as short. Ms. Collett stated that when they arrived, both young men and Mr. Dixon were leaning on the passenger side of the SUV talking while she and Zayden sat in the vehicle.

9.

Ms. Collett wasn't really paying much attention to what was going on with Mr. Dixon and the young men because she was looking at TikTok videos on her phone.

10.

At some point, Ms. Collett saw one of the young men—the short one—hit Mr. Dixon in the head with a gun, take Mr. Dixon's backpack from him, and hit him in the head again before shooting him one time.

11.

The males then ran off. Video footage from cameras in the area show the short male running off with a black bag in his left hand. The other, taller male follows him.

12.

While canvassing the neighborhood, officers encountered a man who told police that he saw two young black men sitting in his driveway about the time the shot was fired, but he didn't think anything of it because it was common for people to wait at that location to catch taxis.

13.

Another neighborhood witness described seeing two men run from Brown Street to apartment J-4 in the Harrison Square Apartments. Based on prior information, officers knew apartment J-4 to be the home of Mr. Patton, his brother Syn'sere Patton (Syn'Sere), and his mother Frances Dement (Ms. Dement). Officers were unable to locate Syn'Sere or Mr. Patton at the apartment.

14.

Mr. Dixon died after being transported to the hospital from the scene.

15.

Various leads in the case helped officers identify one of the Pattons' family friends, Betty Robinson. Officers spoke with Ms. Robinson and Ms. Dement and asked them to review the video footage. When they did, both Ms. Robinson and Ms. Dement identified the short, "first" male in the videos as Syn'Sere and the taller, "second" male as Mr. Patton.

16.

Through their investigation, officers became aware that Syn'Sere and Mr. Patton left Gainesville and were in Atlanta in an unidentified location after the shooting. They also learned that Syn'Sere called Ms. Robinson from a BP gas station in Atlanta. Flock cameras caught images of Syn'Sere driving and Mr. Patton riding in a vehicle on the interstate in Atlanta.

4

17.

As part of the investigation, a forensic interviewer interviewed Zayden, who told the interviewer that at some point when he was in the SUV with his mother, one of the men "hit his friend on the head with a gun." Zayden said both men had guns, but only the older male shot his mother's friend. Zayden also recalled one of the men saying, "Give me your money."

18.

While processing the crime scene, investigators discovered that Mr. Dixon had a black, open face ski mask. This information was provided to Mr. Patton's criminal defense attorney through discovery many months after the incident in a report dated March 3, 2023.

19.

Based on this information, the Defendant sought and obtained arrest warrants for Mr. Patton and his brother Syn'Sere on November 8, 2022, for felony murder, aggravated battery, and aggravated assault. Syn'Sere was also charged with theft by receiving stolen property because the vehicle he used to drive to Atlanta was stolen.

20.

Both Mr. Patton and Syn'Sere were arrested on these warrants the day after the shooting on November 9, 2022. Police met with Mr. Patton and Syn'Sere separately after their arrests and conducted interviews with them. After being advised of their *Miranda* warnings, both Mr. Patton and Syn'Sere waived their constitutional rights and spoke with officers.

21.

During his interview, Mr. Patton told officers that while he was walking with Syn'Sere, a vehicle came down the street and turned around. As the vehicle returned to where he and Syn'Sere were, a guy hopped out of the vehicle. Syn'Sere picked up a bag and began walking off when the guy hit Syn'Sere. Syn'Sere threw the guy into the car and the gun went off. At the time, the guy was wearing a ski mask.

22.

Mr. Patton admitted he and Syn'Sere ran to their apartment and then went to Atlanta after they stopped at another apartment where Syn'Sere picked up a Chrysler 200 that turned out to be stolen.

23.

Syn'Sere's initial statement to police was similar to Mr. Patton's. But later he admitted that he met Mr. Dixon to buy seven grams of marijuana. Because he had no money, he was going to use Cash app to pay Mr. Dixon. At the time, though, he didn't have any cell service and was going to use wi-fi to make the purchase, but there was no wi-fi available where he was on Brown Street.

24.

Syn'Sere admitted that he shot Mr. Dixon with a gun he had for about six hours. Syn'Sere also admitted that he took Mr. Dixon's backpack but denied robbing Mr. Dixon. After the shooting, Syn'Sere threw the gun into some bushes across the street from the location. He ran back to his apartment and got someone to take him to Burger King. After that someone took him and Mr. Patton to another apartment where they got into the Chrysler 200 and drove to Atlanta.

25.

At the time of Mr. Patton's arrest, he was only 16 years old. He was denied bond at his initial appearance.

26.

On January 25, 2023, The Defendant presented the case to a Hall County grand jury. The grand jury issued a true bill of indictment against Mr. Patton and Syn'Sere for one count of malice murder, three counts of felony murder, two counts of aggravated assault, and one count of armed robbery. The grand jury also indicted Syn'Sere for theft by receiving stolen property.

27.

Based on these charges—which were made against Mr. Patton without probable cause and solely because Mr. Patton was merely present at the time Syn'Sere shot Mr. Dixon—Mr. Patton remained in continuous custody without bond from November 9, 2022 until April 8, 2024.

28.

The Defendant, the lead investigator in this case, was aware at all times while working on the investigation into Mr. Dixon's death, based on the evidence and information available to him and the totality of the circumstances, that Mr. Patton was merely present when these crimes were committed. Despite the totality of the information and evidence available to him, The Defendant pursued the charges against Mr. Patton, sought arrest warrants and an indictment against him, and assisted in the prosecution of the case against Mr. Patton from November 9, 2022 to April 8, 2024.

29.

On April 3, 2024, Syn'Sere pled guilty in the Superior Court of Hall County (Superior Court) to one count of voluntary manslaughter as a lesser included charge of malice murder, two counts of aggravated assault, one count of armed robbery, and one count of theft by receiving stolen property. The court sentenced Syn'Sere to a total sentence of 30 years on probation with the first 14 years in confinement. The felony murder charges against Syn'Sere were dismissed.

30.

At his plea, Syn'Sere testified about what happened when he killed Mr. Dixon. On the record in open court, he stated what the Defendant already knew about this case—that Mr. Patton had been merely present when these crimes were committed.

31.

Based on the testimony, two days later, on April 5, 2024, the State finally agreed to a bond for Mr. Patton and the Superior Court granted the bond with the State's consent. Mr. Patton, however, was unable to make the bond, and remained in custody until April 8, 2024.

32.

Three days later, on April 11, 2024, the State finally presented, and the Superior Court accepted, a *nolle prosequi* dismissing all charges in the indictment against Mr. Patton.

33.

Two months later, with the consent of the State, the Superior Court entered an order restricting Mr. Patton's criminal history of these charges and sealing the Superior Court record in his case.

## QUALIFIED IMMUNITY: CONSTITUTIONAL VIOLATION

34.

Mr. Patton's federal civil rights, as protected by 42 U.S.C. §1983 were violated because he was arrested without probable cause. Federal law prohibits the illegal seizure of a person. An arrest without probable cause violates the United States Constitution and provides the basis for a civil rights claim under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments. Because Mr. Patton has a clearly established right to be free from unlawful seizure and from unlawful arrest, Mr. Patton is authorized to bring a federal civil rights action against the Defendant.

35.

As a direct and proximate result of The Defendant's unlawful actions, Mr. Patton was seized and detained against his will without bond for 17 months, first at a Regional Youth Detention Center while he was a juvenile, and then at the Hall County Detention Center after his 18th birthday.

## QUALIFIED IMMUNITY: CLEARLY ESTABLISHED LAW

36.

At all times relevant to this action, the law was clearly established that a law enforcement officer swearing out an arrest warrant against a citizen without probable cause, arresting that citizen pursuant to such a warrant, and then depriving that citizen of his liberty violated the Fourth and Fourteenth Amendments of the United States Constitution. In this instance, the Defendant's conduct so obviously violated the United States Constitution that prior case law is unnecessary.

9

37.

However, in November of 2022, clearly established case law existed that placed the Defendant on notice that seeking an arrest warrant for Mr. Patton without probable cause violated Mr. Patton's constitutional rights. *Jeffrey Cozzi v. City of Birmingham, et. al.*, 892 F.3d 1288 (11th Cir. 2018), was decided prior to this incident and thus served as clearly established law that the Defendant should have known. *Cozzi* placed the Defendant on notice that during the course of an investigation, discarding and ignoring plainly exculpatory evidence and easily verifiable information that established that Mr. Patton did not commit any of these crimes, but was merely present when they were committed, is unreasonable.

38.

*Cozzi* held that where a police officer unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, reasonable officers in the same circumstances and processing the same knowledge as the officer could not have believed that probable cause existed to arrest the person. *Id.,* at 1297.

39.

*Cozzi* has since been abrogated by *Harris v. Hixon,* 102 F.4th 1120 (11th Cir. 2024). But, even under a *Harris* analysis, Mr. Patton's arrest was unconstitutional and a violation of his federal civil rights. Under a *Harris* analysis, "probable cause exists if the totality of the circumstances could persuade a reasonable officer that there is a 'substantial chance of criminal activity by the person who is arrested.'" *Id.,* at 1126.

40.

Given the totality of the information available to the Defendant at the time he sought arrest warrants against Mr. Patton, even if any inconsistencies in the information the Defendant had at the time of Mr. Patton's arrest are resolved in favor of the State, the totality of the circumstances and the totality of the information available to the Defendant were clearly insufficient for any reasonable officer to believe that probable cause existed for Mr. Patton's arrest under both *Cozzi* and *Harris*.

41.

Additionally, in 2004, the Eleventh Circuit decided *Kingsland v. City of Miami,* 382 F.3d 1220 (11th Cir. 2004). At the time of Mr. Patton's arrest, *Kingsland* served as clearly established law that placed the Defendant on notice that officers may not conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts. While an officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest an officer may not choose to ignore information that has been offered to him or her. *Id.*, at 1229.

42.

Although also abrogated in part in 2024 by *Martin v. Miami Dade County,* 2024 WL 1434329 (11th Cir. April 3, 2024), *Kingsland* was clearly established law in place at the time of Mr. Patton's arrest. This law placed the Defendant on notice at the time of Mr. Patton's arrest of his duty to ensure that he did not seek arrest warrants against Mr. Patton when the totality of the circumstances showed he was merely present when his brother committed these crimes.

43.

Mr. Patton's constitutional rights that were violated here were already clearly established by *Kingsland* and *Cozzi*, applicable law in place at the time of Mr. Patton's arrest. The Eleventh Circuit's binding precedent at the time of Mr. Patton's arrest clearly established that an arrest made without arguable probable cause violates the Fourth Amendment prohibition on unreasonable seizures.

**LIABILITY FOR MALICIOUS PROSECUTION PURSUANT TO 42 U.S.C. §1983**

44.

The Eleventh Circuit has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under 42 U.S.C. §1983. *Carter v. Gore*, 557 Fed. Appx. 904 (11th Cir. 2014).

45.

To establish a federal malicious prosecution claim under 42 U.S.C. §1983, a plaintiff must prove both the elements of the common law tort of malicious prosecution and a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland*, 382 F.3d at 1234.

46.

The elements of the common law tort of malicious prosecution include:

- a criminal prosecution instituted or continued by the present defendant;

- with malice and without probable cause;

- that terminated in the plaintiff accused's favor; and

- caused damage to the plaintiff. *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

12

47.

Mr. Patton's federal civil rights, as protected by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983 were violated by the Defendant because the Defendant caused warrants to be issued for Mr. Patton's arrest for felony murder, aggravated battery, and aggravated assault without probable cause.

48.

As a result of the arrest warrants sought and obtained by the Defendant, the Defendant continued a prosecution against Mr. Patton without probable cause, including providing testimony to secure an indictment against Mr. Patton for one count of malice murder, three counts of felony murder, two counts of aggravated assault, and one count of armed robbery. Mr. Patton's federal civil rights, as protected by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983 were violated by the Defendant's actions to seek the indictment against Mr. Patton.

49.

The prosecution begun by the Defendant after obtaining the arrest warrants and the indictment with additional, unreasonable, and unwarranted charges against Mr. Patton resulted in Mr. Patton being denied bond and being continuously incarcerated in juvenile and adult detention facilities without liberty for 17 months. Mr. Patton's federal civil rights, as protected by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983 were violated by the Defendant because the Defendant's actions as described herein resulted in Mr. Patton's unconstitutional 17-month detention.

50.

An officer's liability for malicious prosecution flows from initially securing an invalid warrant, and liability extends to foreseeable injuries related to subsequent seizure, detention, and prosecution. *Carter,* 557 Fed. Appx., at 907. The Defendant's actions in seeking two criminal processes—arrest warrants and an indictment—against Mr. Patton resulted in an unconstitutional and unreasonable prosecution of him.

51.

The Defendant's actions, which occurred without probable cause, give rise to an inference of malice. The Eleventh Circuit has held that "a jury can infer malice from an officer's lack of probable cause." *Exford v. City of Montgomery,* 887 F.Supp. 2d 1210, 1227 (11th Cir. 2012).

52.

The Defendant was responsible for the decision to seek arrest warrants and the indictment against Mr. Patton, both of which led to his 17-month detention. Because the Defendant chose to ignore evidence available to him at the time of both of these decisions that showed that Mr. Patton was merely present—and neither could be nor was criminally responsible for these crimes in light of the evidence that his brother Syn'Sere committed them—the Defendant's prosecution of Mr. Patton was malicious. As discussed above, in light of all of this information, the criminal prosecution was resolved in Mr. Patton's favor with a dismissal, restriction of his criminal record, and sealing of his court case. As discussed below, Mr. Patton sustained damages as a result of this unreasonable, unlawful, and unconstitutional criminal prosecution. Mr. Patton has, therefore, successfully established a federal malicious prosecution claim under 42 U.S.C. §1983.

## QUALIFIED IMMUNITY IS NOT AVAILABLE TO THE DEFENDANT

53.

Defendants are not entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits for damages brought against them in their individual capacities. *Morris v. Town of Lexington, Ala.,* 748 F.3d 1316, 1321 (11th Cir. 2014). Where law enforcement manufactures evidence to provide legal justification, fails to conduct a reasonable investigation, or *ignores facts within their knowledge*, legal justification does not exist, and qualified immunity is inappropriate. *Kingsland, supra,* 382 F.3d 1220, 1231 (emphasis added).

54.

Sworn law enforcement officers are "required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). [1] "A qualified immunity analysis must charge the officer with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances." *Kingsland, supra,* 382 F.3d at 1228.

55.

Here, the Defendant is not entitled to qualified immunity because he conducted a constitutionally deficient investigation and ignored facts available to him at a probable cause level that Mr. Patton was both uninvolved in these crimes and innocent of them. Consequently, the Defendant lacked probable cause to apply for a warrant and lacked probable cause to seek an indictment against Mr. Patton.

---

[1] Subsequently called into doubt only as to a matter of a Florida statute reviewed in a subsequent case, *Davis v. City of Apopka,* 78 F.4th 1326 (11th Cir. 2023), a decision dealing with an issue particular to Florida law in a case decided after Mr. Patton's arrest.

56.

The Defendant's actions amount to a denial of both procedural and substantive due process because Mr. Patton was not afforded adequate process by state officials pre- or post-deprivation and because the Defendant's actions, in light of the facts available to him at the time of his actions, shock the conscience and furthered no valid governmental interest.

57.

In this case, at the time the Defendant obtained arrest warrants against Mr. Patton, the Defendant knew from the witness statements, video recordings, and physical evidence that one person—Syn'Sere Patton—shot Mr. Dixon, who at the time of his death met up with Syn'Sere in uncertain circumstances with a backpack and a ski mask to complete a deal for marijuana that resulted in a struggle between Syn'Sere and Mr. Dixon.

58.

The Defendant also knew at the time of arrest that Syn'Sere ran from the scene first, obtained a car that turned out to be stolen and went to Atlanta. While Mr. Patton accompanied him, the evidence available to officers at the time of Mr. Patton's arrest was that Mr. Patton was not involved in the crimes themselves. All evidence at the time showed Syn'Sere as the perpetrator.

59.

After the arrest warrants were issued and executed, the Defendant and other officers interviewed both Mr. Patton and Syn'Sere. Through these interviews, the Defendant obtained additional evidence that corroborated the fact Syn'Sere was the perpetrator of these crimes and that Mr. Patton was merely present.

16

60.

Nevertheless, the Defendant, aware of these facts and the sum total of the evidence, sought and pursued an indictment against both Mr. Patton and Syn'Sere. The Defendant did not have to continue this prosecution against Mr. Patton and could have chosen, instead, to follow the evidence, and prosecute Syn'Sere alone.

61.

No reasonably prudent, trained law enforcement officer would have believed that arguable probable cause, much less actual probable cause, existed to seek arrest warrants against Mr. Patton for the death of Mr. Dixon.

62.

However, even if this Court accepts that arguable and actual probable cause existed for the arrest warrants to issue against Mr. Patton, neither arguable nor actual probable cause existed for an indictment to be presented or issued against Mr. Patton.

63.

A reasonably prudent, trained law enforcement officer in the Defendant's position would have paused and engaged in further investigation before seeking arrest warrants against Mr. Patton.

64.

However, even if a reasonably prudent, trained law enforcement officer in the Defendant's position were warranted in seeking arrest warrants against Mr. Patton, a reasonably prudent, trained law enforcement officer in the Defendant's position would have paused and engaged in further investigation before seeking an indictment against Mr. Patton.

17

65.

In the two months that passed between the date of Mr. Patton's arrest and the date of his indictment, the Defendant had sufficient time to properly investigate the case. During this time, he gleaned no new evidence that pointed to any actual involvement in these crimes by Mr. Patton. This fact alone supports Mr. Patton's claim that the continued prosecution against him by the Defendant was unreasonable, unconstitutional, and malicious.

66.

In particular, the fact the Defendant, as part of his investigation, failed to obtain reports from the crime scene investigator prior to Mr. Patton's indictment that corroborated Mr. Patton's truthful statement that Mr. Dixon had a ski mask on at the time Syn'Sere fired upon him supports Mr. Patton's showing that this unreasonable and unconstitutional prosecution was malicious.

67.

By neglecting to conduct and complete a thorough initial investigation before arresting and indicting Mr. Patton, the Defendant acted too swiftly and with total disregard for Mr. Patton's civil rights. The goal of this and any reasonable police investigation is to arrest only the person who actually committed the crimes. Such determination is based on the fair, objective, and trustworthy evidence before the officer at the time of the arrest decision. When the sum of the available fair, objective, and trustworthy evidence shows that a person like Mr. Patton has not been involved in the crimes, the officer should not arrest or prosecute that person.

68.

Here, Mr. Patton should overcome any claim of a qualified immunity defense by the Defendant because Mr. Patton has established that the Defendant violated Mr. Patton's constitutional rights against unreasonable seizures and his due process rights to liberty and to be free from unlawful arrest because these rights are clearly established in our constitution and laws.

**DAMAGES**

69.

Had a thorough investigation been performed from the outset, Mr. Patton would have been spared an unlawful detention that lasted 17 months.

70.

Had the Defendant performed a thorough investigation from the outset, Mr. Patton would have been spared the emotional stresses of the unnecessary and wrongful arrest, incarceration, and indictment; the embarrassment stemming from the situation; and the subsequent loss of the last two years of his childhood and high school years. Mr. Patton, as a result of the Defendant's actions, also lost the ability to provide for his family through work during the time he was incarcerated.

71.

Mr. Patton, a juvenile at the time of his arrest and indictment is now legally an adult and is a law-abiding citizen. At the time of his arrest he was just a young man in high school looking forward to graduation. He spent 17 months of his young life incarcerated as a result of the Defendant's unreasonable, unconstitutional, and malicious actions.

72.

Mr. Patton and his family, including his mother Ms. Dement, have suffered damages due to the violation of his civil rights. This traumatic and painful experience has fundamentally altered and disrupted Mr. Patton's life and those of his family members. He has been caused substantial financial harm and emotional distress due to the irresponsible conduct of the Defendant. The Defendant failed to act responsibly and reasonably in determining the true perpetrator of the crimes that led to Mr. Dixon's death.

73.

The Hall County Sheriff's Office and the Gainesville Police Department then allowed the information from the unreasonable and unconstitutional arrest of Mr. Patton to be communicated to third parties, including local and online publications that post arrest-booking photos, for widespread publication throughout the community.

74.

As a result of the prosecution, the case against Mr. Patton was reported in local and online news media outlets. The publication of Mr. Patton's arrest-booking photo and photos of him in inmate's clothing during court hearings were distributed in these media outlets.

75.

The publicity from these local and online publications has caused harm to Mr. Patton's reputation, his character, and ultimately his ability to find employment. Despite the dismissal of his case, restriction of his criminal history, and sealing of his case, this publicity continues to have negative effects on his ability to work.

76.

Because Mr. Patton was arrested as a direct and proximate result of the Defendant's unreasonable, unlawful, and unconstitutional actions and inactions, Mr. Patton has incurred and will continue to incur economic damages including lost wages, loss of economic opportunity, and other economic damages in an exact amount that can be proven at trial.

77.

As a direct and proximate cause of the Defendant's unreasonable, unlawful, and unconstitutional actions and inactions, Mr. Patton has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage, and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

**HARM DONE TO MR. PATTON**

78.

The Defendant knew and should have known that arresting Mr. Patton and charging him with the most serious of crimes under these circumstances was a violation of his civil rights and would cause harm to him, his family, his reputation, and his livelihood.

79.

The actions and inactions of the Defendant directly and proximately led to Mr. Patton being falsely arrested and jailed, which constitute violations of Mr. Patton's rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

80.

The actions and inactions of the Defendant resulted in Mr. Patton being maliciously prosecuted.

**PRAYER FOR RELIEF**

81.

FOR ALL OF THESE REASONS AND BASED ON ALL OF THESE FACTS, Mr. Patton respectfully prays that this Court:

1.  assume jurisdiction over this action;

2.  hold a jury trial on all issues so triable;

3.  award economic, compensatory, general, and special damages to Mr. Patton against the Defendant in an amount to be proven at trial;

4.  award Mr. Patton's attorneys' fees under 42 U.S.C. §1988;

5.  tax all costs of this action against the Defendant; and

6.  award any additional and/or alternative legal and/or equitable relief that is just and appropriate.

It is SO RESPECTFULLY SUBMITTED, this the 7th day of November, 2024.

Markus Boenig
Georgia Bar No. 158106
Attorney for Plaintiff


*/s/Malcolm Palmore*
Georgia Bar No. 560203
Attorney for Plaintiff Mr. Patton


**PALMORE, BOENIG & ASSOCIATES, PC**
575 Research Drive, Suite C
Athens, Ga. 30605
Email Address: mpalmore@pba-georgialawyers.com
Phone Number: (706) 549-6880
Fax Number: (706) 549-6897

22